HILAND HALL, *Adm'r of Erastus Severance,* deceased, *vs.* STEB-
BINS WALBRIDGE.

*It would seem,* that personal chattels attached on mesne process by one officer, may be subsequently attached on other process by *other officers,* and thus successive liens created in favour of *different* officers.

A lien upon goods, by attachment upon mesne process, is dissolved by a confession of judgment before a justice of the peace, upon the original cause of action, and a subsequent attachment thereby becomes the first in right.

If goods under attachment be wrongfully taken away from the officer, and he die before action brought, his administrator may maintain trover for the goods, for the benefit of the attaching creditors.

THIS was an action of trover and conversion, commenced by the administrator, for goods taken from the intestate in his life time. The cause came before this Court upon the following *case made,* agreed on by the parties, viz:

On the 18th day of March, 1816, the defendant then being a constable of the town of Bennington, served four several writs of attachment, one in favour of *Hall & Co.* one in favour of *John Kane,* and two in favour of *Russel, Tracy & Co.* upon all the goods then in the store of *Wm. S. Cardell,* of said Bennington, a de-

*Bennington,*
*January,*
*1827.*

Hall, Adm'r!
*vs.*
Walbridge.

fendant in said writs, and said goods were receipted by *Zacheus Hovey* and *Aman Rawson,* the said Rawson then being a clerk in said store to said *Cardell.* The goods were then exposed for sale in said store. A day or two after the attachments were completed, *Cardell* made a bill of sale of said goods to the said receipters, who continued the sales in their names until the attachments of *Severance* hereinafter mentioned.

On the 23d day of March, 1816, the defendant having in his hands an attachment in favour of Daniel Rogers against said Cardell, went to the said store in order to serve it upon said goods, and demanded the goods of Hovey and Rawson upon said receipt, but was prevented from serving it, by Hovey, Rawson and Cardell, who locked themselves up in said store, and the writ was afterwards served upon other property of said Cardell.

The defendant lived about a mile and a half from the store of said Cardell.

On the 25th day of March, 1816, *Erastus Severance,* another constable of said town of Bennington, served eight several writs of attachment upon said goods, in favour of different persons, the said Wm. S. Cardell being a defendant in said writs. These attachments were made with the consent of the said receipters and Cardell, and the goods were receipted to Severance by said Hovey and Rawson, and the store continued open, and sales were made until the 20th of May, 1816.

On the 20th of May, 1816, the receipters being in failing circumstances, Severance, with their consent, and also with the consent of Cardell, went to the store where said goods were on sale, and at evening took possession of the store, and having the key of the same, began taking an inventory of the goods and putting them into boxes. Severance, with one or two assistants, laboured in boxing up the goods as aforesaid through that night and the next day, and continued in the store until the morning of the 22d of May, when the defendant came with his teams and forcibly took away three boxes of the goods which Severance had put up, but was forcibly prevented by Severance from taking away the residue.

The goods remaining in the store on the 20th of May aforesaid, are the same described in the plaintiff's declaration, and the same which had been previously attached as aforesaid.

On the 22d of May, 1816, the defendant and Severance, believing there were goods sufficient to satisfy all the attachments, made an agreement, that they would quarrel no further, and that all the goods, as well those taken away, be *Walbridge* as the others, should be carried to *Moses D. Robinson's* store, and if it should turn out that either officer suffered any loss, the other was to bear his equal proportion of the loss so suffered.

In pursuance of said agreement, the goods were carried to the store of Moses D. Robinson by the defendant and Severance, and left in his care.

The writs, as well those served by the defendant as those served by Severance, were all entered at the June term of the Ben-

nington county court, 1816, and all continued to the next term of said court, in December, 1816.

*Bennington,*
*January,*
*1827.*

Hall, Adm'r,
*vs.*
Walbridge.

On the 2d day of August, 1816, Cardell confessed judgment on all the demands for which Walbridge had attached, before William Henry, Esq. a justice of the peace for the county of Bennington.

Within a day or two after the said judgments were confessed, the defendant having in his hands executions issued upon said judgments, obtained an order from the first judge of the county court and a justice of the peace, to raise the *posse comitatus,* which was raised, and the goods were removed by force, and against the will of Severance, from the store of said Robinson, and on the 16th of September following, were sold at publick auction, by the defendant, in full satisfaction of said executions, and a residue of $157,79 applied upon an execution in favour of Daniel Rogers against said Cardell, issued on a judgment confessed by said Cardell, August 2d, 1816, before said Wm. Henry, Esq.

Erastus Severance died September 21st, 1816, and administration on his estate was granted to *Matthew Severance,* October 5th, 1816. At the December term of Bennington county court, 1816, judgments were rendered against Cardell, on all the writs which Severance had served. Executions were issued December 30th, 1816, and within thirty days from the rendition of said judgments, they were put in the hands of Stephen Robinson, a sheriff's deputy for the county of Bennington, and within said thirty days, the goods described in the declaration were demanded of the defendant, of Hovey and Rawson the receipters, and of the administrator of said Severance, and they all neglected to deliver any part of them.

At the same term of the Bennington county court, nonsuits were suffered in all the suits, for which the defendant had attached.

An inventory of the estate of Severance was returned to the probate court for Bennington district, October 5th, 1816, not including any of the property described in the plaintiff's declaration. The estate was represented insolvent, and commissioners of claims were appointed, who made return to the probate court on the first Monday of June, 1817, and neither of the creditors for which Severance attached, presented any claim against his estate.

*Hiland Hall* was appointed administrator *de bonis non,* May 3d, 1820.

The amount of the sales by Walbridge, September 16th, 1816, is to be considered as the just value of the goods at that time, being the sum of $3,169,71.

If upon this case, the Court should be of opinion, that the plaintiff is entitled to the whole or any part of the goods, judgment to be rendered for the plaintiff accordingly, for such sum as the court shall consider him entitled to; otherwise, judgment to be rendered for the defendant.

HILAND HALL,

TRUMAN SQUIRES, *att'y for the def't.*

28

*Bennington,*
*January,*
*1827.*

Hall, Adm'r,
*vs.*
Walbridge:

At the last term, the cause was argued at great length, by *Bennett* and *Everett*, for the plaintiff, and by *Squier* and *Davis*, for the defendant, and was continued for advisement.

On the last day of the present term,

Hutchinson J. delivered the following opinion of the Court.

I have had no thought of delivering an opinion in this cause, till within half an hour previous to our coming into court this evening, and of course cannot attempt to present a detailed view of all the points and authorities urged upon the court in argument, but only those points upon which the court consider the merits of the cause must turn.

This is an action of trover, and is presented to the court by a case agreed to by the parties. The question urged as arising upon the priority of the attachment, is not the point upon which the cause turns, as will be seen in the result. Some difficulty might have arisen upon this part of the case, were it not for the after proceedings, stated in the case. It seems, that the defendant first attached the goods in *Cardell's* store, and took a receipt from *Hovey* and *Rawson* for the same, and they were left in the store and offered for sale, as before the attachment. This was on the 18th of March, 1816. The defendant went again, with other writs, on the 23d of said March, to attach the same property, but was prevented, by the locking the store, by *Cardell* and said receipters. March 25th, 1818, *Severance* the other constable, went with eight writs against Cardell, and, with the consent of *Hovey, Rawson* and *Cardell*, took the same goods, being, as the court understood the case, all the goods in said store, and he took the same receipters, and left the goods in the store, and *Cardell* or his clerk went on with sales as before.

It is unnecessary for the court now to decide, whether upon these facts *Walbridge*, the defendant, could maintain his lien on the goods, to the entire amount of his attachment, and could have regained the possession of the goods from the receipters and *Cardell*, notwithstanding the attachment of *Severance;* for the attachment by *Severance* created in him a lien upon the goods, at least to hold subject to the prior attachment of *Walbridge*. *Walbridge* still had his remedy against the receipters, had they remained good and responsible, and had the suits commenced by his attachment been regularly pursued. But, it seems by the case, that on the 20th of May following, *Hovey* and *Rawson* became in failing circumstances, and *Severance*, with consent of them and *Cardell*, took possession of the goods, being the same described in the plaintiff's declaration, and began to take an inventory and put them into boxes. While he was doing this, the defendant *Walbridge* came with his teams, and forcibly took away three boxes of the goods, thus put in boxes by *Severance*, and was prevented by *Severance* from taking any more. On the 22d of said May, *Severance* and *Walbridge* believing that the goods were of sufficient amount to satisfy all the claims of the attaching creditors, made an agreement, by which all the goods

Bennington,
January,
1827.

Hall, Adm'r,
vs.
Walbridge.

attached were put into the store of *Moses D. Robinson,* for keeping, and, should there be any loss, each of said constables was to bear his proportion of the same. All the writs were returned, and the actions entered and continued, at June term, 1816, to the December term following. Had the actions all remained in court till judgments and executions were obtained, probably, as the event proves that the goods were insufficient to pay all the debts, the officers or the creditors who employed them, must have shared the loss.

But it appears, that on the 2d day of August, 1816, *Cardell* confessed judgment on all the demands for which *Walbridge* had attached the goods, and executions were taken out and delivered to *Walbridge,* who, in a day or two, went with the *posse,* and took the goods, and sold them on these executions. Afterwards, at the December term of the court, those suits, in which *Walbridge* had made the service, were discontinued, while the other creditors, who had employed *Severance,* obtained their judgments and executions.

The Court entertain no doubt but that the taking of these confessions discharged the original attachments in the suits, and destroyed the lien *Walbridge* before had in the goods, and left them subject only to the attachments made by *Severance.*

It further appears in the case, that Walbridge's sale of the goods was made September 16, 1816 ; that the avails were applied to pay the demands for which he had attached, leaving a balance, which he applied in part payment of an execution in his custody, in favour of one *Rogers* against said *Cardell.* That *Severance* died September 21, 1816, and *Matthew Severance* was appointed administrator upon his estate, and that the creditors took their executions from the *December* court, delivered them to an officer regularly and within thirty days, and within the same time caused demand to be made for the goods, of the defendant, and of *Rawson* and *Hovey* the receiptors, and of the administrator of *Severance,* but they were not delivered. By all this, the lien of the creditors, for whom *Severance* attached, had become perfect upon the goods. And there was a clear right of action in favour of *Severance,* had he been alive, against *Walbridge,* for the goods, as he had taken and sold them after his original lien had become extinct. Had he only taken them and not afterwards sold them, possibly some doubt might have arisen out of their joint possession, at the store of *Moses D. Robinson.* But as he forcibly took them with the *posse,* and afterwards sold them and applied the avails to pay the other debts of *Cardell,* and all this while *Severance* was living, we are agreed, that under these circumstances, *Severance,* after the sale and before his death, had a good cause of action against the defendant, for thus converting the goods.

But upon the remaining point, whether *Hall,* the present administrator of *Severance,* can maintain the action, under all the circumstances that now appear in the case, one of us has entertained some doubt.

It is objected, that the lien of the creditors for whom *Severance* attached, is lost, by their not presenting their claims before commissioners. There was no claim thus exhibited, nor is it easy to conceive what claim there was to exhibit. He, in his life time, had been faithful, and not guilty of any neglect. If he had been, and the claim sounded in tort, and his estate not enriched by it, such claim could not have been supported. Possibly it might, had he been a sheriff, on his official bond ; yet that would seem difficult, for there was no cause of complaint against him at his decease. But in answer to all this, it is said, and so the majority of the Court think, that the several creditors, by reason of the attachments made by *Severance* on their writs, and the letting go of the opposing lien, if there was one, by the confessions, obtained a security for their debts, to the amount of the property taken by the defendant from the store of *Moses D. Robinson*, that these creditors have been guilty of no neglect to the prejudice of their lien. They have not only pursued their actions to final judgments and executions, but have delivered their executions to a proper officer, and caused a demand to be made for the goods, of the administrator of *Severance*, who stood in his place, and who would have had the control of the goods, had they not been taken away by the defendant ; also a demand upon the receipters, and even upon the defendant himself. The plaintiff, therefore, as administrator of *Severance*, has a right of action to recover for these goods, for the benefit of those creditors. He pursues the action for them. I doubt whether, if he should refuse to let them use his name for this purpose, this Court, as a court of chancery, ought not to compel him so to do. The defendant was very imprudent in taking the goods as he did, unless he first had a full indemnity, which the law authorized him to require of the creditors who employed him, before he encountered the risk of taking the goods.

Judgment must be entered for the plaintiff, and, according to the agreement stated in the case, the amount of the defendant's sales, made September 16, 1816, being $3,169,71, is to be taken as the fair value of the goods. That sum is less than the amount of the claims of these creditors, therefore, interest must be cast upon that sum from that time, and added to the sum, and the amount must be the present judgment.

Judgment for the plaintiff.

SKINNER, Ch. J. having been of counsel in the cause, did not sit on the trial.

*Hiland Hall, Milo S. Bennett* and *H. Everett,* for the plaintiff.

*Truman Squier, G. R. Davis* & *C. Langdon,* for the defendant.