RHODA MURRAY, *et al. vs.* CHARLES M. ELDRIDGE.

That an attaching creditor, taking judgment, by agreement with his  debtor, at any
   other day than that set in his writ, thereby relinquishes his lien to a creditor subse-
   quently attaching the same property.

   This cause came up from the county court to  be re-examined upon the following case agreed to by the parties :
   " *Case* against defendant, as constable of *Hinesburgh*, for neglecting to levy an execution, in  favor  of plaintiffs,  upon property attached by him,  at the suit of the plaintiffs.   Plea, not guilty. At the trial, it appeared that on the 12th  day  of  July, 1827,  the defendant, who was then constable of *Hinesburgh*, attached two horses, the property of *Allen* and  *Warren Murray*, on  a  writ in favor of the plaintiffs against them,  dated 12th of July, 1827, demanding one hundred dollars in  damages, and returnable before *Mitchell Hinsdill*, justice  of the peace, on  the third Monday of August, 1827 ;  That afterwards, and  before  the  30th of July, 1827, the defendant attached the same property, subject to the first attachment,  in  favor  of  *Boynton* and *Hurlburt*, on other writs, which were returnable  before  the 3d Monday of August, 1827 ;  That, on the 30th day  of July,  1327, the plaintiffs' writ was returned  to the  magistrate,  who  issued it, and the plaintiffs and *A.* and  *W. Murray* appeared  before the magistrate, and entered into an  agreement to join issue  upon the action and  go  to trial immediately ;  of which agreement  the  magistrate made a memorandum  upon the writ ;   That a trial  was  then  had,  and the plaintiffs exhibited their claim,  and the defendants an offset, and the plaintiffs recovered  $84 76 damages,  and $2 95 costs, for which sums judgment  was  entered up ;  That  the plaintiffs took out execution on the judgment  the  same day, and delivered it to the defendant on the 31st day of July, 1827 ;  That the de-

CHITTENDEN,
January.
1830.

Murray et al.
vs.
Eldridge.

fendant had notice of the before mentioned agreement, and also that the execution delivered to him was issued upon the judgement recovered in the action, on which he had attached the property ; That the plaintiffs directed defendant to levy the execution upon the property so attached ; That, on the 29th day of September, 1827, the defendant returned the execution to the magistrate wholly unsatisfied, and with a return endorsed thereon, dated August 4th, 1827, setting forth that he had demanded the property attached of *Boynton* and *Hurlburt* (the subsequent attaching creditors) who refused to deliver it, and no other property being shown to him or found, &c. It also appeared that the said writs of *Boynton* and *Hurlburt* were prosecuted to final judgment and execution, and the same property sold thereon.

Upon this evidence the plaintiffs requested the court to charge, that the plaintiffs were entitled to recover ; but the court charged the jury, that the agreement between the plaintiffs and *A. & W. Murray*, to anticipate the return day of the writ and go to trial, under the circumstances of the case, dissolved the attachment, and that consequently, defendant was not liable." Verdict for the defendant.

*Bailey and Marsh, for the plaintiffs.*—There is no pretence, that the plaintiffs and *A.* and *W. Murray* were guilty of any fraud in fact, and, unless the agreement was a fraud in law, the defence cannot be supported. It cannot be considered a fraud in law, unless the interests of subsequent attaching creditors were, or might have been, injuriously affected by it. If, then, the subsequent incumbrances neither were, nor could have been, prejudiced by the agreement, it is valid and the defendant is liable. The process in favour of the subsequent attaching creditors was returnable before the process in favour of the present plaintiffs ; but the plaintiffs, by virtue of their attachment, had acquired a priority of *lien*, of which subsequent attachments would not divest them, though first prosecuted to judgment. The executions of the subsequent attaching creditors could not be levied, until the first process was disposed of, and the *lien* created by it was satisfied ; and the rights they acquired, by virtue of their attachments, could not be, in any manner, affected, by any subsequent proceedings on the part of the plaintiffs.—It is only where the interests of such incumbrances were, or might have been, injuriously affected, that it has ever been holden, that any agreement between the plaintiff and defendant in the progress of the suit would discharge an attachment. The rights of bail stand on a different ground ; and they may sometimes be discharged where an attachment would

CHITTENDEN
January,
1830.

Murray et al.
vs.
Eldridge.

not. The liability of bail arises from contract, and, as in other contracts, any material alteration in its terms or conditions, any change of the extent of the liability, will operate as a discharge. It is upon this ground, that amendments, the substitution of a different cause of action, by the addition of new counts, increasing the *ad damnum* &c. have been holden to discharge bail.

In the present case, there is no pretence, that the subsequent attaching creditors did sustain any damage, and it is apparent, from the facts of the case, that they could not.—The agreement ought to be considered in law, what it was in fact, an arrangement intended for the benefit of all persons in interest, and really beneficial to all parties, by enabling not only the present plaintiffs, but also the subsequent attaching creditors, to levy their executions upon the property attached, sooner than they could have done otherwise, and by saving a considerable expense in keeping. The parties to the original suit might no doubt have made a *bona fide* agreement to continue the cause for many weeks, and it could not have been contended, that such agreement would have discharged the attachment.—If they might lawfully by agreement delay the hearing, to the obvious prejudice of subsequent attaching creditors, why might they not anticipate it, for the common good of all concerned ? There is nothing in the agreement to show, that the parties intended to discontinue the action, but the contrary.

The proceedings bear some analogy to a confession of judgment, under that section of the statute, which authorizes the defendant to tender a confession upon antecedent process.—It was an offer by the defendant to consent to a judgment for such sum as the court, upon hearing, should find to be due. It was decided in *Adm's of Severance* vs. *Stebbins et al.* 2 *Aikens*, 215, that a confession of judgment after the entry of a cause in court, and while it was out of court by a continuance, followed by a dicontinuance of the action, dissolved the attachment. But the court could not have intended to decide, that a confession of judgment in a case, where the statute gives the defendant a right to tender a confession, would dissolve an attachment.—At the time the agreement in question was made, the defendant had a right to tender a confession for the amount of the plaintiffs' claim, which seems to have been $95 00, and the plaintiffs could not have refused the tender.—If the defendant could have given such confession without prejudicing the rights of the plaintiffs, can it be said, that those rights are impaired by a consent that the justice might reduce the amount of plaintiff's claim by an offset? In *Hill* vs. *Hunnevill*, 18 *Mass. Rep.* 192, it was said, that the

CHITTENDEN
*January,*
1830.

Murray et al.
*vs.*
Eldridge.

submission of an action to referees, with an agreement that defendant might offset any claims, did not dissolve the attachment. If these be law, the parties to the original suit, in the present instance, might lawfully have referred this action by a rule of the justice court under the statute with a similar agreement; and it is not easy to perceive why, instead of appointing referees, who must return the report to the county court (the plaintiffs' claim being more than $40 00) they might not agree to leave the same question to the decision of the magistrate, who issued the process.

*C. Adams, for the defendant.*—No action can be maintained against an officer for any neglect of duty, except in cases where the law presumes knowledge, on the part of the officer, of the plaintiffs' rights.

An officer attaching property is bound to have that property forthcoming to respond such judgement as may be legally rendered in that particular suit, and, if no judgement is rendered, he must return it to the defendant. An execution, though between the same parties in any different suit, would not bind the property ; and, if the creditor would take the property, he must turn it out on such execution, and the respective rights and liabilities would arise from such turning out. In this case the officer could have no means of knowing that the execution issued on a judgement in the suit in which the property was attached. The execution showed that it did not. Without the *lien* created by the attachment the plaintiffs had no right to call on the officer to apply this property on their execution ; because, at the time of the delivery of their execution, the property had become subject to the *lien* of *Boynton* and *Hurlburt.*

In this case the inquiry is, who had the legal *lien* upon the horses, the plaintiffs, or *Boynton* and *Hurlburt,* at the time the execution was delivered. By the attachment, the plaintiffs acquired no permanent interest in the propety ; a *lien* surely was created which would be lost by any discontinuance of the suit. It can make no difference in this case that the judgement was rendered on the original writ, it was in effect a discontinuance of the suit. The judgement may be good between the parties, but, in order to bind the property, and avoid subsequent *liens,* it must be rendered legally, and in pursuance of the writ creating the *lien.*— *Hall, adm'r of Severance* vs. *Walbridge,* 2 *Aik.* 215.—To allow this proceeding would have a tendency to entrap officers and receiptors. They might, in this way, be made accountable before the day originally set for the court. The obligation of the officers and receiptors is to have the property forthcoming in 30 days

from the judgement ; and, if judgement may, by consent of par-
ties, be thus anticipated, it would operate as a frand upon them.

During the term, the following opinion of the Court was de-
livered by

HUTCHINSON, J.—The plaintiffs delivered a writ of attachment.
to the defendant for him to serve as constable of the town of
*Hinesburgh.* By virtue of this writ he attached certain proper-
ty. Afterwards a writ was delivered to him in favor of *Boynton*
and *Hurlburt*, against the same debtor, by virtue of which he at-
tached the same property, subject to the attachment he had before
made in favor of the plaintiffs. The plaintiffs, by an agreement
with their debtor entered on the files of the justice, had their trial
and obtained jugement at an earlier day than that set in their writ
for trial. The defendant having sold the property to satisfy the
after attachment of *Boynton* and *Hurlburt*, the question is now
presented, whether the plaintiffs lost their *lien* upon said property,
by taking judgement before the return day of their writ, so that
the creditors, who attached afterwards, can hold the same. The
Court consider, that the *lien* of the plaintiffs was lost by their tak-
ing such judgement. It is true, so far as the arguments of the plain-
tiffs' counsel should have weight in any case, they apply as favor-
ably in this as in any other. Nothing appears that the plaintiffs'
judgement, rendered by agreement on the 30th day of July, was
any larger than would have been a judgement that might have
been rendered on the return day of the plaintiffs' writ. Still the
question returns, did the plaintiffs preserve their *lien* by obtaining
a judgement in their action regularly commenced ? When *Boyn-
ton* and *Hurlburt* procured their writ to be served by the de-
fendant, by attaching said property, they established their right,
not only to the surplus of said property, after the plaintiffs' *lien*
should be satisfied, but to the whole of said property, if the *lien* of
the plaintiffs should not be perfected. The moment, therefore,
in which the plaintiffs' action was discontinued, or they obtained
a judgement by confession, or in any other way not in the regular
prosecution] of said action, the *lien* of *Boynton* and *Hurlburt*
to the whole of said property was perfected. The property ceas-
ed to be holden by the plaintiffs' attachment. When the par-
ties appeared before the justice and agreed to have a trial on the
30th of July, they may have had a trial about the same matters
described in said writ, but it was not a trial in said action. The
writ still stood a writ returnable the third Monday of August, and
the judgement was rendered on the 30th of July preceding. If
any agreement of the parties to vary the time of holding the court,

could have been valid, the most plausible course would have been to have agreed to the amendment of the writ, altering the return day. We give no intimation that even this would have been valid. As the case stands, it is fairly within the case cited from *Aikens' Reports*, where taking a confession of judgements, and forthwith levying executions upon the property attached, was adjudged to discharge the *lien* created by the attachment, as against other attaching creditors of the same debtor. There is, therefore, no error, and

CHITTENDEN<br>January,<br>1830.<br>——<br>Murray et al.<br><i>vs.</i><br>Eldridge.

The judgement of the county court is affirmed.

*Bailey* and *Marsh*, for plaintiffs.

*C. Adams*, for defendant.