STATE of VERMONT *vs.* The PRESIDENT, DIRECTORS and COM- PANY of the ESSEX BANK.

The withdrawing of bank stock under the form of loans upon private security, if permitted with intent to reduce the effective capital below the amount re- quired by charter, is a violation of the charter.

But on proceedings had by information for the purpose of vacating the charter, it is not a matter of course that for this cause it will be declared vacated. The power of the court is to be exercised in discretion; and if no existing danger to the community requires it to be exercised, the court will decline to exercise it.

In this case several objections of a formal nature were presented, and passed upon by the court. But as the 'points decided can very rarely have any application to other proceedings, they are not deemed of sufficient importance to be reported. A trial was then had before the court upon the merits : and after argument,

The opinion of the court was delivered by

ROYCE, J.—This is an information preferred under the 19th section of the " act, to incorporate the President, Directors, and Company of the Essex Bank," for the purpose of vacating the charter of incorporation. The charges on which the prosecutor relies are the following :

1. That the whole amount of stock was not subscribed before the bank commenced operations. The papers exhibited in evi- dence furnish an apparent answer to this charge, which is not so framed as to justify an impeachment of the papers, on the ground of any secret trusts among the subscribers.

2. That five dollars on each share subscribed, was not deposi- ted with the commissions in gold or silver coin, at the time of sub- scribing, nor fifty per cent on the whole capital stock deposited with said commissioners *in specie*, before operations were com- menced at the bank. As to the deposit of five dollars on a share the evidence is not decisive either way. The fact is left in uncer- tainty. And upon the other branch of this charge two questions arise :—1, when the bank should be said to commence operations, with reference to this part of the act ; and, 2, whether specie was required in the first instance, to complete the deposit of fifty per centum of the capital stock.

It is evident that the time of commencing operations, which is spoken of in the *proviso* to the 4th section, is not the time when the directors were to commence their official duties. This ap- pears from the latter part of the 3d section, which directs that within ten days after the directors shall enter upon the duties of their office, the commissioners shall deliver to them all the funds

ESSEX,
*March,*
1836
State
*vs.*
Essex Bank.

deposited by subscribers, with a list of the subscribers, specifying the number of shares to which each is entitled. Previous to this the directors could be in no condition to enter upon business transactions. The time here contemplated, is therefore, the time at which the banks should begin to make loans, and incur liabilities by issuing their notes. According to all the evidence they commenced doing this on the 6th day of May A. D. 1833. The deposits on which the respondents rely, as having made up the fifty per centum required, were made on and before the 15th day of April A. D. 1833. And the evidence as to their amount, is satisfactory, provided they were made in such funds as the act required. They consisted, for the most part, in current bank bills, and certificates of deposit, issued by some of the neighboring banks, and made subject to the order and control of these directors.

That part of the act which requires this deposit of one half of the entire stock, is not explicit as to the description of funds to be deposited. The words are—" *Provided,* That no operations shall be commenced at said Bank, until the number of one thousand shares be subscribed, and fifty per centum of the capital stock be deposited with said commissioners." The prosecutor relies on the 8th section, which regulates the authority of the directors to contract debts, by the amount of specie—deposits on hand, and the amount of capital stock paid in specie into the bank, as furnishing an inference that these deposits on subscriptions were required to be made wholly in specie. But the inference is not a necessary one, nor has it been the practical construction in like cases. It has been usual to accept for these purposes, and even to treat as specie, those available cash funds for which specie might readily be obtained. We think, therefore, that the second charge has not been supported.

3. That a large portion of the stock paid in was withdrawn from the bank before it commenced business. The fact has been fully established, that before the commencement of ordinary business transactions, or immediately upon that event, the stock paid in was mostly returned to the several owners, in the form of loans upon private security. By this means the amount of stock in actual possession, as the basis of corporate responsibilities, was reduced from the sum of twenty thousand dollars, required by the act, to about three thousand. Upon this reduced capital the respondents proceeded to do business, regulating the amount of business with reference to the amount of stock retained. This was little less, in effect, than changing the bank granted, of at least twenty thousand dollars effective capital, to one possessing a capital of but

Essex,
March,
1836.

State
vs.
Essex Bank.

three or four thousand dollars, with capabilities restricted in proportion. Now it was the prerogative of the legislature not merely to create this institution, but to determine the means it should possess. It was chartered with a limitation of capital at forty thousand dollars, twenty thousand of which were required to be realized as an indispensable qualification for commencing business.— This limitation and this requirement constitute the grand characteristicks of the charter. They were such as the public interest and convenience were supposed to require. It is not to be assumed, that in expectation of a greater or less ability to furnish bank accommodations, the charter would ever have been granted. The course on which the respondents entered was therefore an obvious deviation from that contemplated by the act of incorporation. And this ground alone furnishes a sufficient probable cause for instituting this prosecution. It was highly proper that such an apparent perversion of the act should undergo a public investigation.

4. That in contracting debts the bank has greatly exceeded its proper limits, as prescribed by the 8th section of the act. Suffice it to say on this part of the case, that although the evidence has not proved the abuses complained of, it is calculated to excite those suspicions which might reasonably have influenced the prosecutor.

The power of the court in this case is simply to declare the charter vacated, This power is to be exercised in discretion.— And we think that on the present occasion it ought not to be exercised. It is by no means certain that the respondents intended a fraudulent violation of the act, since they appear to have contemplated a gradual return of the loaned stock, and a considerable portion of it would seem to have been already returned. The business concerns of the bank appear to have been managed with skill and ability, and no existing danger to the community seems to require the destruction of the institution. Another consideration of much weight arises from the character of this proceeding. It is not one in which the court can act as a court of chancery, and bring the affairs of the institution to a gradual close, consulting the safety of creditors and all others concerned. If we act at all, it must be in a summary and final manner. A more just and beneficial remedy may be sought under the general law of A. D. 1831, if the case shall hereafter be found to require it.

Judgment that the charter be not vacated.

*Fletcher* prosecutor for the state.

*J. Mattocks* and *Bell* for the respondents,