JOHN PENFIED *et al. v.* REUBEN SKINNER.

*(In Chancery.)*

The treasurer of a voluntary association for charitable purposes will be decreed to account for the moneys in his hands, and pay over, according to the interest of the association.

Such an association cannot appropriate their funds for any other purpose than the one intended by the articles of association or by-laws.

THE orators were members of a voluntary association called the Evangelical Society, formed in 1804, for the purpose of assisting indigent young men in acquiring an education to qualify them for the Christian ministry. The funds were to be obtained by the gratuitous labor and contributions of the associates and others. The defendant, under the by-laws, which provided for an annual appointment of officers, was elected treasurer of the association, in October, 1809, and continued to act as such for several years, and, as stated in his answer, till the association was dissolved. The orators' bill charged that he continued to be treasurer until July, 1832, when another person was appointed in his stead.— The association continued to hold their regular meetings and appoint their officers until October, 1825, at which time they voted to transfer their funds to the northwestern branch of the American Education Society, and appointed a committee to make the transfer, but it did not appear that such transfer was ever made, or that the vote of transfer was ever rescinded, unless the vote of December, 1830, hereafter mentioned, had that effect. After this, the society ceased to hold their annual meetings, and did not hold any meeting whatever, until 1830, in which year they met and elected officers, and, in December of that year, voted to transfer and pledge to the trustees of the Burr Seminary a portion of the funds of the society. The bill charged that the defendant had in his hands large sums of money and other property belonging to the association, and sought for discovery and relief in the premises, and prayed that the defendant might be decreed to account, and deliver to the existing treasurer the money and property of the association in his possession, and for such other relief in the premises as to justice and equity appertained.

*N. Harmon* and *S. S. Phelps,* for orators.

*P. Smith*, for defendant.

The opinion of the court was delivered by

RUTLAND,
*January.*
1839,

Penfield *et al.*
*v.*
Skinner.

WILLIAMS, Chancellor.—Voluntary associations for charitable purposes are recognized to a certain extent. They may be viewed as trustees of the several sums received, and will be holden to account for and make a proper distribution of them. Their officers, who receive money or other property collected, or contributions for the purposes of the association, where such purposes are not illegal, will not be permitted to apply it to their own use, without rendering an account therefor, but will, as trustees, be holden to account and pay over to those who may be entitled to receive it. Such associations are not permitted to assume a corporate character, and, as such, to appear upon the record. This inclined Lord Eldon, in the case of *Lloyd* v. *Loaring*, 6 Vesey jr.'s R. 773, where a body of freemasons filed a bill to have dresses, decorations, &c., delivered up, to allow a demurrer, although he suffered an amendment, by which the plaintiffs, or some of them, were permitted to sue, as individuals, for the same object. In the case of *Fells* v. *Read*, 3 Vesey jr.'s R. 70, a bill was sustained in favor of the members of a club to have a silver tobacco box, which was to be.in the custody of an officer for the time being, delivered up to one who succeeded him, and the defendant was decreed to deliver it up and pay cost.

Those were cases of bills for delivering up specific chattels, but I do not see why the principle should not apply in a case like the one under consideration. In the case of *Exrs. of Burr* v. *Smith et al.*, 7 Vt. R. 241, which occupied so much the attention of the court and bar, not a doubt was expressed that the officers of voluntary associations, who received money as such, would be holden to account for and pay over what was thus received.

If jurisdiction is entertained over them by a court of chancery, it appears to me that it will become necessary to examine their constitution or by-laws or articles of association, in order to discover the object for which they were formed; and every member contributing, and every one receiving donations, whether styled officers or not, must be considered as having regard to the articles of association, whether they are called constitution or by-laws, and must proceed accor-

dingly. And if it is so provided, the majority may control the minority by a vote, if such vote is for the purposes of the association and within its provisions. The court of chancery have power to see that such associations are faithful trustees in the disposition of the charitable fund, and will see that it is appropriated to the object designed, and will not suffer it to be diverted to another, unless with the consent of the contributors. If the object should entirely fail, probably each contributor would be entitled to have his money refunded, and might or might not, according to the circumstances of the case, have a remedy therefor, either at law or in chancery.

The northwestern branch of the American Education Society is an association for the same purpose as that of the Evangelical Society, and still continues to collect and distribute donations, &c., contributed for the purpose of ministerial education. The vote, therefore, of October, 1825, was to make a proper disposition of the funds of the society, and was not a diversion of them from the object for which they were contributed.

In the case of corporations it is generally true, that if they cease to hold their meetings, agreeably to their charter, it operates a dissolution. The vote of October, 1825, and the subsequent discontinuance of the meetings of the society and their failure to elect their officers, must, as to the " Evangelical Society," be considered as an abandonment or dissolution of the association.

The meetings which were holden in 1830, and the appointment, at that time, of the officers, cannot be regarded as proceedings of the society, inasmuch as they had relinquished their organization. Nor can the officers then chosen be entitled to receive their funds. The individuals composing the association are interested in having the funds disposed of for a proper charitable purpose, and for the promotion of the object for which they were given.

The vote of December, 1830, to transfer to the Burr Seminary a portion of the funds of the society, cannot, for the reasons already given, and for the additional reason that it is not contemplated by, nor in accordance with, the constitution and by-laws of the society, be recognized or regarded.

But as a bill may be sustained by any of the individuals

composing the society, to compel a proper application of the funds, the defendant must render an account of what he has received and what now remains in his hands, and it must be referred to a master to ascertain and report the amount.— When this is ascertained, the charitable intention will then be carried into effect by decreeing the amount to be transferred, agreeably to the vote of October, 1825, to the northwestern branch of the American Education Society, or, if that society refuse to accept it, in such other way as will be according to the original intention of the association.

BENNETT, J., having been of counsel, did not sit in this case.