## THE BRANDON IRON COMPANY *v.* ROLLA GLEASON.

### *Attaching Creditors. Subsequent Attaching Creditors. Liability of Officer. Corporations.*

An attachment creates a *lien*, and places the property in the custody of the law to respond the judgment and execution that shall be obtained thereon; and as against subsequent attachments, the rendition of a judgment in due form and course of law, is as necessary as the attachment itself. So is also, the issuing of an execution on that judgment, and duly charging the property therewith.

And if several creditors attach the same property, and the first attaching creditor, (his claim being large enough to absorb all the property,) by an agreement with the debtor, takes all the property in satisfaction of his claim, and discontinues his suit; though by this agreement his title may be good as against the debtor; as against the subsequent attaching creditors, who perfect their *lien,* by judgment and execution, it will give no title to the property, and can have no effect, unless their assent was also obtained.

So, also, if the attaching officer permits the property to pass into the hands of the first attaching creditor in satisfaction of his debt, under such an agreement, the officer is not protected by this application of the property, and it is no legal accounting for the same, therefore he will be held liable to the subsequent attaching creditors who perfect their *lien;* the first attaching creditor having lost by the discontinuance of his suit, the *lien* created by his attachment, and by the agreement acquired no claim or title to the property, as against the officer or subsequent attaching creditors.

A Corporation will not lose its corporate existence by having ceased to do business after April, 1841, to February, 1852, and by disposing of their personal property, and neglecting to choose corporate officers in that time; and though a legal surrender may *be presumed,* where for a sufficient length of time, there has existed an entire *non user* of corporate franchises, and a neglect to choose corporate officers, still, the lapse of time required for that purpose has never been decided in this State.

The case *Munger* v. *Fletcher,* 2 Vt. 524, commented upon.

TRESPASS ON THE CASE, brought against the defendant Gleason, as Sheriff of the county of Chittenden, in two counts,

for not keeping and delivering several articles of personal proper-
ty, for thirty days after the rendition of judgment, to respond the
said judgment, attached by him as such Sheriff, at the suit of the
plaintiffs against one David French. The plaintiffs made no claim
for the property which was sold on the execution of Wm. Ran-
dall, the surplus of which was paid over to plaintiffs on their exe-
cution.

Plea, general issue and trial by jury, April term, 1851,—BEN-
NETT, J., presiding.

The following is the Officer's return upon the writ in favor of
the *Brandon Iron Co.* v. *David French:*

STATE OF VERMONT, ⎱          FEBRUARY 22d, 1845.
    *Chittenden County, ss.* ⎰     Then by virtue of this writ, and
by direction of A. B. Maynard, Esq., agent for attorneys for
plaintiffs, I attached as the property of the within named defend-
ant, three horses, one stage wagon, one lumber wagon, one one-
horse wagon, two cutters, one sleigh partly finished, one lumber
sleigh, one one-horse wagon, one double harness, one concord
wagon, and on the same day I delivered to the within named Da-
vid French a true and attested copy of this writ, with a list of the
property so attached, with this my return thereon indorsed. The
above attachment, subject to an execution in my hands for collec-
tion, for about ninety dollars in favor of one Landon, also to one
attachment in favor of Chauncey W. Conant.
    (Signed)

                            ROLLA GLEASON, *Sheriff.*

The following is the officer's return upon the execution in favor
of the *Brandon Iron Co.* v. *David French.*

STATE OF VERMONT, ⎱          MARCH 28, 1848.
    *Chittenden County, ss.* ⎰     Then I repaired with this exe-
cution, to the usual place of abode of David French, the within
named debtor, in Williston, and there demanded the damages and
costs contained in this execution, with the legal interest thereon,
with all legal charges for serving the same, and the said David
French having refused and neglected to pay and satisfy said exe-
cution with costs of service, I seized by virtue of this execution,
one stage wagon, the proper goods and chattels of the said David
French, and on the same day I advertised at the Inn of David
French, in Williston, that said wagon would be sold at public ven-
due at said French's Inn, on the 11th day of April, then next.
.And having safely kept said wagon, and the said David French

having failed to redeem the same by otherwise satisfying this execution and the charges of the officer thereon, I, at said French's Inn, in Williston, on the 11th day of April aforesaid, sold at public vendue, said wagon to William H. French of Williston, the highest bidder for said wagon, for the sum of fifteen dollars, and the officer's costs and charges in proceeding thus far being the sum of four dollars and three cents, and the money arising from the sale of said wagon, amounting to the sum of fifteen dollars, deducting said officer's costs and charges therefrom, leaves to be indorsed on this execution from the proceeds of the sale of said wagon, the sum of ten dollars and ninety-seven cents. There having been attached on the original writ, upon which judgment has been obtained and this execution issued, one one-horse wagon, two cutters, one new sleigh partly finished, one lumber sleigh, one one-horse wagon, and one concord wagon, subject to an execution in favor of William Randall, and against David French, which execution was in my hands for collection, and having sold said property on said execution, there remained after satisfying the same, the sum of one dollar and twenty-six cents, in part satisfaction of this execution, which said sums of ten dollars and ninety-seven cents, and one dollar and twenty-six cents, I have paid over to the creditor within named, in part satisfaction of this execution, and I return this execution into the office of the clerk of the court from whence it issued, unsatisfied except as above.

    (Signed)        Attest,

                ROLLA GLEASON, *Dep. Sheriff.*

STATE OF VERMONT, ⎱            APRIL 14, 1848.
    *Chittenden County, ss.* ⎰     Then and at several other times, on diligent search throughout my precinct, I cannot find either any goods, chattels or estate of the within named David French whereon to make further service and levy of this execution, as therein required.

    (Signed)        Attest,

                ROLLA GLEASON, *Dept. Sheriff.*

On trial, the averments in the declaration in reference to the writ, attachment, judgment and execution, in favor of the plaintiffs against David French were proved as alledged, except so far as modified by the returns of the defendant upon said writ and execution. The defendant, in addition to his returns, proved the prior attachment of the property in question, upon a writ in favor of Chauncey W. Conant against said David French, which was duly entered in court, in reference to which it appeared, that said French was indebted to said Conant, in a sum far exceeding the

value of all the property attached, and that before any judgment was obtained, in either suit, the said French at the request of said Conant, turned out and said Conant received all the property which is attached and is not accounted for in the defendant's return upon the execution, (said Conant being fully aware of the existence of the Brandon Iron Co.'s suit,) in part satisfaction of the said Conant's claim against said French at its full value, and upon an agreement that his suit should be discharged or discontinued which was accordingly done. It appears that the plaintiffs were a corporation, and ceased to do active business after the first of April, 1841, at which time all of its personal property in possession was bought by the said Chauncey W. Conant,—that at this time the stockholders were three in number, John Conant, and his two sons, John A. Conant, and the said Chauncey W. Conant, all of Brandon, who owned the stock in nearly equal proportions, no corporate officers having been appointed since April, 1841. That at this time, and ever since, the stock was regarded of no value by the stockholders, the effects of the corporation not being in their estimation sufficient to pay its debts; that the said John, John A., and Chauncey W. Conant remained the stockholders till after the commencement of the suits against said French, and the turning out of the property attached by the said Chauncey, and the discontinuance of his suit. That previous to the closing of active business of the company, in 1841, the said John A. Conant acted as the general agent of said company; that during this time said Chauncey W. was an active participator and manager of certain departments of the business of the company, connected with the carrying on and management of their furnace, and the manufacture of iron in Brandon; but that after 1841, the said John A. Conant had the sole charge of collecting the demands and closing up the concerns of the corporation, and that it was by his direction that the suit against French was instituted, and that the arrangement by which the property attached was turned out to the said Chauncey W. Conant, was without his knowledge, or that of the plaintiffs, except so far as it may be considered as given by the said Chauncey W., as one of its stockholders.

The court intimated, that they should charge the jury that if the property thus attached was thus appropriated in part satisfaction of C. W. Conant's debt, honestly and at its fair value, that

this was a sufficient accounting for the property thus appropriated and a bar to the plaintiffs' suit so far as that part of the property was concerned. The plaintiffs did not insist upon their claim to any other portion of the property attached, and the jury on the above instructions and charge of the court returned a verdict for the defendant, subject to exceptions. And to the above charge of the court the plaintiffs excepted.

*C. L. Williams* and *E. N. Briggs* for plaintiffs.

The only way in which the defendant endeavors to avoid his liability to the plaintiffs, is by showing that the property attached was regularly disposed of to satisfy a prior lien in favor of Chauncey W. Conant.

This lien, we insist, was lost by the discontinuance of said Conant's suit. *Hall, admr.* v. *Walbridge,* 2 Aiken 215. *Murray et al.* v. *Eldridge,* 2 Vt. 388.

If a formal confession of judgment as in the case of *Hall* v. *Walbridge,* or a regular adjudication upon the question of the defendant's indebtedness but upon an earlier day than the return day of the writ, as in the case of *Murray* v. *Eldridge* (upon which confession and judgment the property attached was formally disposed of) would operate to discharge a lien created by an attachment, much more would a simple turning out and receiving of the property in discharge of the debt have such an effect.

The fact that French was indebted to C. W. Conant and that the property was "appropriated in part satisfaction of C. W. Conant's debt honestly and at its full value," can make no difference with the plaintiffs rights. The same might have been said in reference to the disposition of the property in the cases above cited from 2 Aiken and 2d Vt.

The difficulty is, the property was not *legally* disposed of, so far as the plaintiffs' rights to it were concerned.

By the plaintiffs' attachment, the property was taken from the control of those previously interested in it and placed in the custody of the law, or of the defendant as its officer, to await the determination of the plaintiffs' suit, and while this was its situation the defendant could permit no disposition of it, except such as the law provided, without rendering himself liable.

Brandon Iron Company *v.* Gleason.

*A. B. Maynard* and *E. J. Phelps* for defendant.

1. The application of the attached property in good faith in satisfaction of the prior attachment, is an answer to this action against the sheriff, inasmuch as the amount of the prior attachment far exceeded the whole value of the property. *Munger* v. *Fletcher,* 2 Vt. 524.

2. The assent of Chauncey W. Conant to the arrangement, was under the circumstances binding upon the other two stockholders and a justification to the defendant.

Though originally a corporation, for more than four years previous to this transaction the corporate rights of the company had lapsed and been virtually surrendered. During this period they had neither organization, corporate officers, business or property. Their stock was nominal and worthless, and held by only three stockholders, John, John A., and Chauncey W. Conant. Under these circumstances, though they must of course sue, in the corporate name, on demands accrued to the corporation when in existence, they had no other corporate rights. They stood as three partners or joint creditors, and the act of one, (in the absence of the collusion) bound the others. Ang. & Ames on Corp., Chap. 21, Sec. 4. *Slee* v. *Bloom et al.,* 19 Johns. 456. 2 Kent Com. 250. *Penniman* v. *Briggs,* 1 Hopkins Ch. 300. *Penfield et al.* v. *Skinner,* 11 Vt. 296. 8 Cowen 387.

Especially would this be true of the act of Chauncey W. Conant who bought in the sole remains of the "institution" at the time its concerns were wound up, and was from that time the only person really in interest.

3. The court will not reverse a judgment to enable a plaintiff to recover nominal damages, especially where upon common law principles he ought not to recover costs. *Bullock* v. *Beach et al.,* 3 Vt. 73.

The opinion of the court was delivered by

Isham, J. This is an action on the case against the defendant as sheriff of Chittenden county, for not keeping and delivering certain articles of personal property attached by him as such sheriff, at the suit of the plaintiffs against David French.

The case shows the disposition of all the property attached. No claim is made for that part of the property which was sold on

the execution of Wm. Randall, the surplus of which was paid over to the plaintiffs on their execution. But they claim to have all the property embraced in the officer's return applied on their execution which was not disposed of on the execution of Wm. Randall.

In relation to this property, we learn, that previous to the plaintiffs' attachment, it had been attached at the suit of C. W. Conant, and which had priority of lien over the attachment of the plaintiffs, and that his claim exceeded in value all the property attached. We learn also, that after these several attachments were made, Mr. Conant, by an arrangement with Mr. French, received all the property included in the officer's return and which has not been otherwise properly accounted for, at its full value, and which was applied in part satisfaction of his claim and attachment against French, and under an agreement which was carried into effect, that the attachment and suit of Conant should be discharged and discontinued. It is under this arrangement and application of this property on his debt, that Mr. Conant claims title to this property not only as against Mr. French, but also as against the plaintiffs as subsequent attaching creditors, and the defendant also relies upon this agreement and appropriation, as legally accounting for the property by him attached. And if by this agreement Mr. Conant has perfected a legal title to this property, it is evident that the property attached by the defendant has all been accounted for, and he is not liable in this suit. But if that arrangement was insufficient to convey such title, or if his lien by virtue of his attachment is lost, by a discharge and discontinuance of the suit, then the defendant is responsible in this suit for the property received by Mr. Conant and appropriated on his debt.

In the case of *Hall* v. *Walbridge*, 2 Aik. Rep. 215, it was held that successive liens by attachment, and in favor of different creditors could be created on the same property. The same principle was recognized in the case of *Murray* v. *Eldrige*, 2 Vt. Rep. 388, and in relation to the rights of subsequent attaching creditors where their proceedings to judgment and execution have been regularly taken, the court use this language: "that they have "thereby established their right not only to the surplus of said "property, after the plaintiffs' lien should be satisfied, but to the

" whole of the property if the lien of the prior attaching creditors " should not be perfected."

No practical inconvenience has been found to follow from this rule, and we entertain no doubt as to its correctness to the extent to which it has been carried by the former decisions of this court. The question in this case is therefore narrowed down to the simple inquiry, whether Mr. Conant has so perfected his title under his attachment and agreement with French, as to give him a good right to this property as against the plaintiffs. The statute has been uniform in relation to the rights of attaching creditors and the steps necessary to be taken to perfect their right to the property attached. The attachment creates a lien, and places the. property in the custody of the law to respond the judgment and execution that shall be obtained thereon. As against subsequent attachments, the rendition of a judgment in due form and course of law is as necessary as the attachment itself. So is also the issuing of an execution on that judgment and duly charging the property therewith. And as these proceedings are *in invitum* there should be a general and substantial compliance, at 'least, with all the requirements of the statute. Upon this principle it was held in the case of *Hall* v. *Walbridge*, that a confession of judgment in a suit, before the act allowing the same, would discharge a lien created by the attachment, as no judgment had been rendered *upon the process*, on which the attachment was made, and the property was held by the subsequent attaching creditors. So also in the case of *Murray* v. *Eldridge* a judgment was rendered by the agreement of the parties, a few days before the time specified in the writ, and its effect was to discharge the lien created by the attachment, and the property was held by subsequent attachments. In that case the court say, " the moment in which " the action was discontinued, or a judgment obtained by confes- " sion, or in any other way not in the regular prosecution of the " action, the lien of the subsequent attaching creditors was per- " fected to the whole of the property, the property ceased to " be holden by the first attachment." These decisions must be decisive upon the question arising in this case, for if the application of the property upon the debt in those cases, under a judgment and sale on the execution superadded to the 'assent and agreement of the parties was ineffectual to perfect the creditor's

title, much less, as in this case, will such an application have that effect, under the simple agreement of the original debtor.

The case of *Munger* v. *Fletcher*, 2 Vt. Rep. 524, has been urged by the defendants as sustaining the right of Mr. Conant to this property under his agreement with ·Mr. French. In that case the property of one Fisk was attached at the suit of six different creditors, and under an arrangement with Fisk and the five first attaching creditors, the property was sold, against the consent of the last creditor, and the avails of the sale held by the officer to respond the judgment and executions that should be obtained. All the creditors perfected their lien and attachment by obtaining judgment, issuing executions thereon, and duly charging the property therewith. The last attaching creditor brought his suit and claimed that the lien of the other creditors was lost, and that the property. was subject to his attachment alone. The court held that as the avails of the sale were not sufficient to pay the first attachment, the action could not be sustained, and that the claim of the different creditors were not lost by that arrangement and sale. It is to be observed that in that case all the creditors perfected their respective attachments by proceeding to judgment, issuing executions and charging the property attached thereon, and it is upon this ground that the court placed their decision. If the officer had neglected to account for the property or its avails and the several creditors had prosecuted him therefor, the first attaching creditor would have recovered the whole, as the avails of the sale were not sufficient to pay his debt. The last creditor, therefore, having sustained no damage, could sustain no action, and the officer having paid the avails of the sale to the first creditor, he had applied the property as it would have been recovered of him. But in this case, if Mr. Conant retains the property, it is applied in a different manner from what it could be recovered.

Mr. Conant by discontinuing his suit and neglecting to prosecute to judgment, can sustain no action against the sheriff for the property attached, as he has no lien thereon for that purpose. The plaintiffs are the only attaching creditors who have perfected their lien by judgment and execution, and they alone can sustain their action against the officer therefor. Upon the principle and authority of that case, even the attaching creditors must perfect

their lien under their attachment, so that the officer can apply the property on those debts secured by attachment and satisfy the claims of those who have a right to call upon him for it. As Mr. Conant had no such right, the defendant is not protected by his claim or lien, in permitting the property to pass into his hands.

As against Mr. French the title of C. W. Conant may be good, as by his agreement he will be estopped to deny Conant's title. But this can have no effect as against the plaintiffs, unless their assent was also obtained. The fact that Mr. Conant was a stockholder in the Brandon Iron Company at the time of his arrangement with French, can furnish no evidence of such assent, for he at that time was in interest adverse to that of the corporation, in no way its representative, or acting as the agent of the corporation. On the contrary, after 1841 the general agency and charge of the debts of the corporation was placed in the hands of John A. Conant, and he alone could act as agent in its behalf.

It has been urged that the plaintiffs have lost their corporate existence by having ceased to do business after April, 1841, and by disposing of their personal property and neglecting to choose corporate officers since that period, and that in consequence of it the stockholders stood in relation to the concerns of that company as partners, which rendered the act of C. W. Conant in making that arrangement binding upon all.

We are not prepared to say, even if that relation existed, that the act of C. W. Conant, situated as he was, would have that effect upon the others interested; much less are we authorized to say, from any fact appearing in the case, that the plaintiffs have lost their corporate existence, or are incapable of exercising their corporate franchises. That they had a charter, and a legal corporate existence under that charter, and were duly organized, has not been put in issue by plea in abatement, or in bar. 11 Vt. Rep. 393, *Bank* v. *Allen.*

And where a charter has been granted and an organization effected under it, the question whether there has been a forfeiture of that charter, or a surrender of its franchises, cannot be tried, so as to be conclusive upon the corporation, in this collateral or incidental manner. On the question of forfeiture, it can only be tried by the writ of *scire facias* or *quo warranto* in direct proceedings between the corporation and the State granting the charter;

and until judicially determined there' has been no forfeiture, although a cause therefor may exist. *State* v. *Essex Bank,* 8 Vt. Rep. 489. 7 Conn. Rep. 45. 15 Pick. Rep. 351. 5 Mass. Rep. 230. 5 John Ch. 366. Ang. & Ames on Corpt. 664. So, to constitute a legal surrender of a charter, there must be an act of the corporation to that effect, and an acceptance of the same by the government granting the charter. In England it is effected by deed to the King, which must be enrolled. 1 Salk. 192. 2 Kyd. on Corpt. 465. In this country by acceptance, and the authorities are uniform, that it is of no avail until accepted. 2 Kent's Com. 358, last ed. Ang. & Ames on Corpt. 658. 24 Pick. Rep. 49. 15 Pick. Rep. 351. 7 Conn. Rep. 45. This doctrine is fully recognized in New York, though they have found the necessity of qualifying the rule in relation to those charters where, in a certain event the individual stockholders are made personally liable—*where, for the sake of the remedy and in favor of creditors,* they will presume a virtual surrender. 2 Kent Com. 358. 1 Hop. 300. 8 Conn. 387. Aside from that particular purpose, Chancellor Kent remarks that "The old and well estab- "lished principle of law remains good as a general rule, that a cor- "poration is not to be deemed dissolved by reason of any misuser "or nonuser of its franchises, until the default has been judicially "ascertained and declared." 2 Kents Com. 359. 4 Paige Ch. Rep. 481, *Wilde* v. *Jenkins.* It is probably true that a legal surrender may *be presumed* where, for a sufficient length of time, there has existed an entire nonuser of corporate franchises, and a neglect to choose corporate officers. Such has been the general received doctrine in this State, and was recognized in *Penfield* v. *Skinner,* 11 Vt. Rep. 296. But the lapse of time required for that purpose has never been decided. In *Slee* v. *Brown,* 5 Johns. 399, it was held that two years would have no such effect. So, also, in *Russell* v. *McLeland,* 14 Pick. 63. A nonuser for ten years was held not to work a forfeiture, or loss of corporate franchises, 7 Conn. Rep. 47. In *Regina* v. *Ballvas,* 1 P. Wm.'s 207, it was held by PARKER, Ch. J., that after twenty-two years, a vacancy in an office under the charter could not be filled, though POWELL, J., dissented, and thought an election might be made on a charter day. It is upon the ground alone, of a presumed surrender of the charter, that evidence of nonuser of corporate fran-

chises can be received. This case does not require a more definite determination as to the length of time necessary to raise such presumption; as no-doubt is entertained that there has not been such a neglect by this corporation, in the use of their corporate franchises, as will operate as a dissolution of its charter.

The plaintiffs therefore, having still their legal existence, and not having assented to the arrangement of C. W. Conant with Mr. French, cannot be concluded by that arrangement, and the defendant must be held responsible for not keeping and delivering up on demand, the property for which this action was brought.

The judgment of the county court must therefore be reversed.