Claflin v. Sylvester.

---

CLAFLIN et al. v. SYLVESTER et al., Plaintiffs in Error.

1.  **Practice:** ABSTRACT OF EVIDENCE: FINDING OF TRIAL COURT: PRESUMPTION. Where no abstract of the evidence is furnished the supreme court, such as its rules require, the presumption will be indulged that the findings of the trial court are supported by the evidence.

Claflin v. Sylvester.

2. **Debtor and Creditor:** PREFERENCE. A failing debtor may prefer one creditor to the exclusion of others, and it is immaterial whether the preference be given by payment, conveyance, mortgage, by delivery of goods, by confession of judgment, or by suffering an attachment.

3. **Attachment:** LIEN. The withdrawal of a plea in abatement filed on the return day of a writ of attachment will not operate as an abandonment of the attachment proceedings nor destroy the lien of the attachment.

4. **Appellate Practice.** A matter not in the case made in the trial court, nor passed upon by that court, will not be considered in the appellate court.

*Error to St. Louis City Circuit Court.*—Hon. Geo. W. Lubke, Judge.

AFFIRMED.

*Nathan Frank* and *Albert Arnstein* for plaintiffs in error.

(1) The institution of the attachment suits of H. B. Claflin & Co. and Jacob Friedman & Bro., against Leubrie Bros. was fraudulent and void, there being no ground for an attachment even if the debts due them were *bona fide*. It was a transfer of property to defraud creditors. *Henderson v. Henderson,* 55 Mo. 534; *Johnson v. Sullivan,* 23 Mo. 474. (2) The testimony shows that those suits were instituted with the preconceived design of the parties to the controversy to obtain the property attached for the use of the Leubrie Bros. *Smith v. Craft,* 12 Fed. Rep. 856. (3) The attachments were instituted as the result of collusion between the parties, friendly proceedings and not adverse or hostile and in contravention of the statute. The right acquired by attachments as against other attaching creditors depends upon compliance with the law. Drake on Attachments, sec. 262, *et seq.* (4) The attachment proceedings were abandoned and the lien was lost by the withdrawal of the pleas in abatement,

and the judgment in favor of Claflin & Co., and Friedman & Bro., stands as though no attachment had been issued. *Bank v. McDonald*, 46 Mo. 31; Drake on Attach., secs. 262, 282; *Lowin v. McGee*, 75 Ind. 508; *Smith v. Scott*, 86 Ind. 346. (5) The attachments being prompted by the debtors when they were insolvent, and after they had contemplated making an assignment for the benefit of their creditors under the statute concerning voluntary assignments, became a part of the same act, and the sheriff became co-trustee with the assignee for the distribution of the property *pro rata*, and the court having jurisdiction of the assignment would have made a proper order touching the matter. *Preston v. Spaulding*, 120 Ill. 208, and cases cited; *Sexton v. Anderson*, 95 Mo. 373, 382.

*H. D. Laughlin* for defendants in error.

The careful and elaborate opinion of Judge LUBKE, as announced upon the decision of the cause in the lower court, is a complete answer to the brief of plaintiffs in error.

BRACE, J.—This is a proceeding under the provisions of section 447, Revised Statutes, 1879, whereby Sylvester, Hilton & Co. and thirty-two other subsequent attaching creditors of Leubrie Bros. seek, by motion, to set aside or postpone the lien of two prior attachments, one in favor of H. B. Claflin & Co. for $39,698.80, and one in favor of Jacob Friedman & Co. for $24,549.73, on the ground :—

"1.   That the debts sued for by Claflin & Co. and Friedman & Co. were, and are not, *bona fide* debts due and owing by the Leubrie Bros.

"2.   That the attachments thereon were levied collusively for the purpose of giving the Leubrie Bros. the control of the property taken thereunder.

"3. That said attachments were not sued out adversely in good faith, but in furtherance of a conspiracy between the Leubries and plaintiffs for the purpose of preventing the *bona fide* creditors of the Leubrie Bros., including these movers, from collecting their just demands."

On the nineteenth of December, 1884, Claflin & Co. and Friedman & Co., defendants in error, sued out their said attachments and caused the same to be levied on the stock in trade of the Leubrie Bros. Later, on the same day, Leubrie & Bro. made a voluntary assignment for the benefit of all their creditors. After such assignment was made, plaintiffs in error being thirty-three other creditors of the Leubrie Bros. sued out attachments against them and caused the same to be levied upon the same property taken under the prior writs of defendants in error. Thereafter, a sale of the property was had by the sheriff and sufficient of the proceeds thereof to satisfy the claims under the two prior attachments of defendants in error are in the hands of the sheriff. Upon the return day of the writ in each of these two cases, Leubrie & Bro., the defendants therein, filed pleas in abatement, verified by affidavit. Afterward, these pleas were withdrawn, the attachments were sustained and thereupon defendants in error, plaintiffs therein, took judgment, each for the amount hereinbefore stated, for which amount and costs each were awarded execution to be satisfied out of the property attached and sold by the sheriff. The application of the money to the payment of these judgments was stayed in the trial court to await the decision of this joint motion filed in each case by plaintiffs in error, the later attaching creditors. On the hearing of the motions, they were overruled, the order staying the payment of the fund in the sheriff's hands upon the execution in favor of defendants in error was vacated at the cost of the movers, and they sued out this writ of error.

I.   While this proceeding may be considered, in its nature, one of equitable cognizance, and we might not feel concluded by the findings of the trial court upon the facts, yet, in the absence of any abstract of the evidence, such as our rules require, and which the plaintiffs in error in this case have not seen proper to furnish, the presumption will be indulged that those findings are supported by the evidence.   *Craig v. Scudder*, 98 Mo. 664; *Jayne v. Wine*, 98 Mo. 404.

The issues and the probative force of the evidence given are so clearly stated, and three of the five points in the brief of counsel for plaintiffs in error for reversal, made on the evidence, are so satisfactorily disposed of by the learned judge, who tried the case, in his able opinion which we find in this record, that, as to them, we are content to simply quote the following passages from that opinion:   "To authorize the sustaining of these motions, the evidence must be sufficient to warrant a finding that these attachments were in fact fraudulent, either because the debts sued for therein were not *bona fide* debts, or that the attachments were suffered or procured to be made for the use and benefit of the defendants, or that they were contrived between the parties with the intent to hinder, defraud or delay the other creditors of the debtors.   Now, as to the first of these elements, all the evidence disproves any assertion that the debts sued for and claimed by Claflin & Co. and Friedman & Co. were not actual *bona fide* debts of Leubrie Bros.   This was virtually conceded by counsel for the attaching creditors after the close of the evidence.   The evidence also fails to show that these attachments were gotten out and suffered to become final upon any understanding, either express or implied, that the debtors, Leubrie Bros., were in any manner to be benefited thereby, or to have the use or control in the future of the property, or the proceeds thereof, which was taken under the writs.   There are some circumstances shown tending in that direction, but the positive

evidence of the debtors and of their manager, and of the attorneys for the debtors and for the attaching creditors, is so strong the other way that those circumstances disappear.

" A careful review of the evidence also satisfies me that it is insufficient to prove that the Leubries suffered these attachments to be sued out, levied and made final with any intent to hinder or delay their other creditors, further than as such intent was lawful, to the end that these creditors, might obtain a preference over the other creditors; and, even if the circumstances in evidence were sufficient to deduce therefrom an actual fraudulent and therefore unlawful intent on the part of the debtors, the evidence is far from sufficient to justify a finding that the (two) attaching creditors intended, on their part, more than to get for themselves such preference by extraordinary diligence in getting out and levying their writs before other creditors, and before the debtors had completed their voluntary assignment, until these plaintiffs had effected their levies.

" It is not averred, and no proof has been offered pointedly to deny, that the grounds of attachment upon which these plaintiffs proceeded, or some of them, did not exist. There is also no proof that the pleas in abatement were afterwards withdrawn in consequence of any express agreement to that effect. All that the proof justifies to be found upon this point is, that the creditors had the best reasons for believing that the debtors would not resist the attachments unless it suited them to do so. And the debts claimed by each of these creditors being actual and now due, the case is, therefore, nothing more nor less than that of a failing debtor preferring several of his creditors to the exclusion of the others. So long as the laws of this state permit that to be done, it is wholly immaterial whether the preference be given by payment, by conveyance, by mortgage, by delivery of goods or valuables, by confession of judgment or by suffering an attachment. Of all these modes

of preference, the last two may be commended because of their publicity, because thereby the taking of more of the debtor's assets than will be necessary to satisfy the creditor's demand is prevented, and because the creditor subjects his claim to the examination of the court.

"Counsel for the movers have asked the court to sustain their motions, on their allegations that these attachments were not adversarious in fact, and that the process of attachment invoked by the plaintiffs with the passive aid of the debtors was an abuse of the court. Assuming that the section of the statute which has been hereinbefore quoted is sufficient to warrant such action upon this ground, how can it be said that the process was abused, when it was founded upon actual debts, and the purpose of taking out the process was to accomplish what was lawful in itself, i. e., obtaining or giving a preference to the creditors suing? * * * If, in the cases at bar, it had been averred and shown, in fact, that no ground for attachment existed, or that the creditors and debtors contrived the commission by the debtors of an act which would furnish grounds for attachment, it might be said that the court's process was designedly abused, and authorized the court's vacating all the proceedings, and leaving the parties where they were when they came into court."

II. The fourth point made by counsel for plaintiffs in error is, that the attachment proceedings were abandoned, and the lien lost by the withdrawal of the pleas in abatement. This position is not sustained by any of the authorities cited. In the case of *Gilbert v. Gilbert*, 33 Mo. App. 259, mainly relied on to support this position, it was held, that a consent judgment entered in an attachment suit before the return day of the writ upon the voluntary appearance of the defendant and waiver of service, operated a discharge of the attachment lien.

While expressing no opinion in regard to that case, it is sufficient to say that that is not this case. The

judgment here was not a consent judgment before the return day of the writ, but one rendered *in invitum* in due course of law after the return day of the writ, duly served. The fact that the defendants therein withdrew their plea in abatement does not change the character of the judgment as one in the enforcement of the lien "acquired by the levy of the attachments in the cause in which it was rendered." If the simple withdrawal of a plea in abatement could have this effect, the plaintiffs in error would be in no better condition than the defendants in error, if, as stated in the brief of their counsel, the pleas in their cases were also afterwards withdrawn and judgment rendered. The fact that they were not so quickly withdrawn as in the cases of the prior attaching creditors, neither distinguishes their judgments from those rendered in favor of the prior attaching creditors, or in any way affected the rights of the parties *quo ad* the property attached. These rights are affected by the priority of the attachments, but not by the priority of the judgments.

III. The fifth point in the brief of counsel for plaintiffs in error was not in the case tried by the court below. The question raised by it was not tried by the court, and it is not before us for determination. This is an action to set aside a prior attachment lien for fraud, actual or constructive, in order that subsequent attachments may be let in against the debtors attached property; not to maintain the prior attachments, the judgment and lien perfected thereunder as a part of the general assignment for the benefit of the plaintiffs in error, defendants in error, and all other creditors under the deeds of assignment; but to cut out the two prior attachment liens so that they may not stand between the attachments of the plaintiffs in error and the attached property. It will be time for this court to determine whether the attachments of defendants in error were a part of a general assignment of the Leubrie Bros.,

only when that question is properly presented on appeal in a case wherein it has been ruled upon between proper parties in an issue raising it in the trial court. It is not so presented in this case. *Sexton v. Anderson*, 95 Mo. 373; *Hard v. Foster*, 98 Mo. 297.

Finding no error in the record, the judgment of the circuit court is affirmed. All concur except RAY, C. J., and BARCLAY, J., absent.