Adler v. Anderson.

BENJAMIN ADLER *et al.*, Appellants, v. E. T. ANDERSON, Defendant; WEAR–BOOGHER DRY–GOODS COMPANY *et al.*, Moving Creditors, Respondents.

St. Louis Court of Appeals, November 11, 1890.

1. **Judgments :** WHAT CONSTITUTES CONFESSION OF JUDGMENT. The withdrawal of a plea in abatement in an attachment suit, attended by the filing of an answer admitting the debt sued on and consenting to a judgment therefor, does not render a judgment entered on the answer one by confession as against creditors of the defendant. It is only when the acknowledgment of the debt is made without the pendency of an action, that a judgment entered thereon is formally one by confession.

2. **Attachments :** AGREEMENT TO WITHDRAW PLEA IN ABATEMENT FOR A CONSIDERATION. An agreement made by the attachment defendant after the attachment, whereby he agrees for a consideration to withdraw his plea in abatement, and to let judgment go in favor of the attaching plaintiff, does not, in the absence of fraud in fact, destroy the lien of the attachment as against subsequent attaching creditors of such defendant; nor does the fact, that such consideration was paid to the attachment defendant under a representation that it was to be applied to the satisfaction of some of his other indebtedness, render the agreement constructively fraudulent.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Silas B. Jones,* for appellants.

(1) The right to put in issue the facts alleged in the affidavit, on which an attachment is sued out, is given by statute alone to the defendant, except where he is not personally served and fails to enter his appearance, and is a privilege personal to the defendant. R. S. 1889, sec. 561; *Landauer v. Vietor,* 69 Wis. 434, 442; *Sannover v. Jacobson,* 47 Ark. 31, 41. (2) If the proceedings in the first attachment are regular on their face, then nothing short of fraud will entitle a subsequent attaching creditor to interfere. Drake, Attachments, sec. 273; *Van Arsdale v. Krum,* 9 Mo. 397; *Cutler v. Lang,* 30 Fed. Rep. 173; *Felton v. Wadsworth,* 7 Cush. 587; *Nenney v. Schluter,* 62 Tex. 327; *Johnson v. Heidenheimer,* 65 Tex. 263; *Page v. Jewett,* 46 N. H. 441; *Rudolf v. McDonald,* 6 Neb. 163. The statute (sec. 570), under which the moving creditors have proceeded, gives subsequent attaching creditors no new rights, but only a new and expeditious remedy. *Sannover v. Jacobson,* 47 Ark. 31, 41. (3) The judgment in this case is not one by confession requiring a statement and affidavit; and is not within the purview of *Gilbert v. Gilbert,* 33 Mo. App. 259; *Boyd v. Ward,* 38 Mo. App. 210; *Claflin v. Sylvester,* 99 Mo. 276. (4) If the attaching creditor's debt is *bona fide,* the attachment proceeding need not be *in invitum* and adversary. It may be instituted at the outset by agreement between the attaching creditor and the debtor, and subsequent attaching creditors cannot set aside the proceeding on that account. *Claflin v. Sylvester,* 99 Mo. 276; *Saddlery Co. v. Urner,* 24 Mo. App. 534; *Landauer v. Vietor,* 69 Wis. 434, 440; *Collier v. Hanna,* 17 Atl. Rep. 390. (5) An agreement between an attaching creditor and the defendant, that the attachment shall be sustained and judgment rendered in pursuance thereof and the property attached disposed of thereunder, does not work an abandonment of the

attachment lien as to subsequent attaching creditors, but when performed it perfects it. *Munger v. Fletcher*, 2 Vt. 524; *Iron Co. v. Gleason*, 24 Vt. 228. Unless it was some part of the purpose of the agreement between plaintiffs and defendant Anderson to enable or to assist the latter to conceal and use a part of his property in security against his other creditors, then it was not fraudulent as to them. *Coffin Co. v. Rubelman*, 15 Mo. App. 280; *State to use v. Frank*, 22 Mo. App. 46; *Hanna v. Finlay*, 33 Mo. App. 645; *McVeagh v. Baxter*, 82 Mo. 518; *Holmes v. Braidwood*, 82 Mo. 610; *Little v. Eddy*, 14 Mo. 160; *McNichols v. Rubelman*, 13 Mo. App. 515; *Hobbs v. Davis*, 50 Ga. 213; *Reehling v. Byers*, 94 Pa. St. 416; *Bear's Est.*, 60 Pa. St. 430; *Troustine v. Look*, 4 Baxter (Tenn.) 162.

*Frank Hicks*, for respondents.

(1) The judgment herein was not obtained in the due and regular prosecution of appellants' attachment proceeding, but originated in, and was solely dependent upon, the contract made therefor between appellants and defendant Anderson. A judgment so obtained is an abandonment of the attachment lien, so far as a junior attaching creditor is concerned. 1 Wade on Attach., sec. 221, p. 414; sec. 217, p. 405; Drake on Attach. [6 Ed.] sec. 262, p. 250; *Gilbert v. Gilbert*, 33 Mo. App. 259; *Iron Co. v. Gleason*, 24 Vt. 228; *Murray v. Eldridge*, 2 Vt. 388; *Hall v. Walbridge*, 2 Aiken, 215; *Clark v. Foxcraft*, 7 Greenl. 348. (2) An attaching creditor cannot, as against a second attaching creditor, by means of and because of the payment of money and other valuable considerations (such as here present) to the defendant, thereby and therefor procure an abandonment by him of his defense and his consent to a judgment, and thereby perfect the lien of such first attachment. Such a judgment is collusive and in fraud of the rights of second attaching creditors,

and the first attachment will be vacated. *Bank v. McDonald*, 46 Mo. 31; *Fairfield v. Baldwin*, 12 Pick. 388; Waples, Attach., pp. 478, 490, *et seq.* ; *Page v. Jewett*, 46 N. H. 441. ( 3 ) The agreement to satisfy such judgment on request of defendant, and the agreement to cause the attached books of defendant to be sold and to pay the proceeds to defendant, and the payment of money to defendant, were reservations of a use and benefit in favor of defendant. The money paid to defendant was in effect derived from the attached property. Said payment and reservations deprived other attaching creditors of their rights respecting the attached property, and enabled the defendant to withdraw from attachment such part of the property. Such a judgment so obtained is in fraud of second attachments. *Gilbert v. Gilbert, supra; Page v. Jewett, supra;* 1 Wade on Attach., sec. 220, p. 414.

BIGGS, J.—The plaintiffs were the first attaching creditors of Eli T. Anderson. Their suit was begun in the circuit court of the city of St. Louis, and a writ of attachment was sent to Dunklin county and levied upon property belonging to the defendant. After this levy had been made the Wear-Boogher Dry-goods Company and Joseph Baum & Co. instituted actions by attachment against Anderson in the circuit court of Dunklin county, and their writs were also levied upon the same property. On the fourth day of November, 1889, a judgment was rendered in favor of the plaintiffs in the attachment suit for the sum of thirty-one hundred and ninety-four dollars and three cents. Execution was immediately issued to the sheriff of Dunklin county. In the meantime the property attached had been sold by the sheriff, and he had realized therefrom a sum much less than the plaintiffs' judgment. On the seventh day of November, 1889, the Wear-Boogher Dry-goods Company and Joseph Baum & Co., the junior attachers, filed a motion under section 570 of the Revised Statutes,

1889, in which they sought to set aside and postpone plaintiffs' attachment and judgment to their attachments. The trial of that motion, and of the judgment of the court thereon, constitute the subject-matter of this appeal. The trial judge was of the opinion that the motion was well founded, and a judgment was entered accordingly. The plaintiffs appeal from this judgment.

The motion of the moving creditors set forth several reasons, why the plaintiffs' judgment ought to yield to the liens of their attachments; but in this court they rest the validity or correctness of the judgment of the trial court on three propositions: *First.* That the plaintiffs' judgment was not obtained in the due and regular prosecution of their suit, but it was the result of a contract or private agreement between them and Anderson. *Second.* That a prior attaching creditor cannot, as against a junior attacher, induce the debtor by the payment of money or other consideration to abandon his defense, which they aver was done in this case. *Third.* That, under the agreement between the plaintiffs and Anderson, a secret use or benefit in the property attached was reserved to Anderson.

I. The rights and priorities of attaching creditors, as between themselves, are matters of strict law. If the first attacher once loses his lien, the rights of junior attachers intervene, and the liens of their attachments take precedence. Drake on Attachments [6 Ed.] sec. 262; *Suydam v. Huggeford*, 23 Pick. 465. This first lien may be lost in many ways, without regard to the good or bad faith of the parties. It will be postponed to the liens of other attaching creditors, if the action is not prosecuted to a judgment, *i. e.*, settled out of court and the suit discontinued (*Brandon Iron Co. v. Gleason*, 24 Vt. 228; Drake on Attachments [6 Ed.] sec. 262; *Taylor v. Mixter*, 11 Pick. 341; *Carter v. Champion*, 8 Conn. 549); or if there is a judgment by confession (*Hall v. Walbridge*, 2 Aik. 215); or if there

is a judgment before the return day of the writ
(*Murray v. Eldridge*, 2 Vt. 388 ; *Gilbert v. Gilbert*, 33
Mo. App. 259 ) ; or if judgment is taken on an item not
embraced or mentioned in the original petition ( *Clark
v. Foxcroft*, 7 Me. 348 ; *Page v. Jewett*, 46 N. H. 441 ;
*Cutler v. Long*, 30 Fed. Rep. 173 ) ; or in any other
way not in the regular prosecution of the suit in sub-
stantial compliance with established rules of procedure.
The rule is that the plaintiff must be able to trace his
execution lien through the usual course of judicial pro-
cedure to the original levy under the writ of attachment.
When this can be done, then the attachment lien
becomes perfect by being merged in the lien of the
execution. The irregularities above specified would
necessarily in any case appear upon the face of the
record, and the court would upon inspection declare the
lien of the attachment lost, and the intention of
the parties could cut no figure in the case.

In the case at bar the plaintiffs' action was prose-
cuted to judgment, and an execution was issued. It
appears that Anderson first filed a plea in abatement in
which he put in issue all the facts stated in the plain-
tiffs' affidavit. On the day set for the trial of this plea,
the defendant withdrew it and filed an answer, in which
he admitted that he owed the plaintiffs thirty-one
hundred and ninety-four dollars and three cents, and
consented that judgment might be rendered for that
amount, which was done. Was this a judgment by
confession within the meaning of the statute ? The
moving creditors hold to the affirmative of the question,
and they rely on the case of *Gilbert v. Gilbert*, 33 Mo.
App. 259. In the *Gilbert case* the defendant by an
arrangement with the plaintiff entered his appearance
before the return day of the writ, and consented that a
judgment might be then rendered against him. This
was done. Whether that action, as against subsequent
attachers, postponed plaintiffs' attachment lien, was the
question in judgment. What was said in the opinion

concerning judgments by confession was afterwards explained by this court in the case of *Boyd v. Ward Furniture Co.*, 38 Mo. App. 210. In the latter case, this court, speaking through Judge ROMBAUER, said : ".It is only when the acknowledgment of the debt is made in the absence of an action pending, that the judgment is formally one by confession." This interpretation of the statute disposes of the question adversely to the moving creditors. The plaintiffs' suit was begun in the regular way, and the defendant was personally served with process. The judgment rendered is this case was a general judgment, which is the only one authorized, when the defendant in the attachment had been personally served. R. S. 1889, sec. 560 ; *Huxley v. Harrold*, 62 Mo. 520. If any reason exists why the plaintiffs should not have the benefit of their attachment lien, it must arise outside of the record.

II. · The record contains the written opinion of the judge who tried the case, and he was evidently of the opinion, that the property had been disposed of by contract between the plaintiffs and Anderson, and that this, of itself, without any regard to the good or bad intention of the parties, worked a dissolution of the plaintiffs' attachment as to the moving creditors. If the court is right as a matter of fact, then the conclusion is correct. The reason for this is, that, in order for the plaintiffs to maintain the priority of their attachment lien, it was necessary for them to prosecute their suit to final judgment and ·execution, Any disposition of the attached property, other than that on final process, would be inoperative as against the subsequent attachers.

This inquiry necessitates the investigation by us of the evidence. There is no real controversy about the facts. The matter in dispute has more to do with the legal effect of the agreement between the plaintiffs and Anderson, which resulted in the withdrawal of the plea in abatement. The following is believed to be a fair statement as disclosed by the record. It is agreed that

the plaintiffs' attachment suit was originally an adversary proceeding. Anderson put in issue the grounds for attachment alleged in plaintiffs' affidavit, and his plea was set down for trial. It appears that both sides made extensive preparations for the trial, and each party appeared to be confident of success. The doubt in the litigation pertained solely to the result of the trial of the plea in abatement. There was no controversy concerning the validity of plaintiffs' debt, and we do not understand that the moving creditors make any such claim now. Just before or on the day set for the trial of the plea in abatement, the attorneys for the plaintiffs and Anderson came together, and through their negotiations an understanding was arrived at, in which it was agreed that Anderson would withdraw his plea and file an answer, admitting the plaintiffs' debt, and consenting to judgment thereon. This agreement was entered into and consummated at the trial term. At the time when this agreement was made, it was represented by Anderson's St. Louis attorney that Anderson owed him three hundred dollars as compensation for his services in the case ; that he also owed his attorneys in Dunklin county for like services, and that he had also incurred various other liabilities in making preparation for the trial, such as traveling expenses, taking depositions, etc. It was represented, in a general way, that the last-mentioned items would amount to three hundred dollars. In order to induce Anderson's attorney to consent to a withdrawal of the plea in abatement and for final judgment on the debt, the plaintiffs' attorney agreed that his clients would pay Anderson's attorney in St. Louis three hundred dollars ; he also agreed that they would pay to Anderson the additional sum of three hundred dollars for the purpose of paying the other liabilities, which it was alleged he had incurred on account of plaintiffs' attachment. This arrrangement was communicated to the plaintiffs ; it was ratified by them and the money paid in accordance therewith on

the day the judgment was entered. It also appears from the testimony that, at the time the plaintiffs levied their attachment, the book accounts of Anderson, who was a country merchant, were also seized. There is no satisfactory evidence in the record as to the amount of the indebtedness represented by the books or its probable value, but it does appear that the sheriff, after a trial of several months, succeeded in collecting only about twenty dollars; that, in doing so, he had spent more than he had collected, and that the parties considered the books of no value. However, it was agreed that an order for the sale of the books should be asked for, and whatever plaintiffs received from the sale, exclusive of the costs of selling, should be paid over by the plaintiffs to Anderson. It was also a part of the agreement that, after the plaintiffs had received the amount of money held by the sheriff, which was less than the judgment by several hundred dollars, and after the sale of the books, they would acknowledge satisfaction of the judgment. It is not denied that Anderson was insolvent at the time.

In this paragraph we will only discuss the effect of this agreement in respect of the property attached. Whether the evidence shows a case of fair dealing, either as a matter of law or fact, will be discussed further on in this opinion. We may, however, stop at this point to make the observation, that Anderson had the undoubted right to defend the plea in abatement or not, just as he saw fit. He was under no legal or moral obligation to the junior attaching creditors to resist the action. *Claflin v. Sylvester*, 99 Mo. 276; *Nenney v. Schluter*, 62 Tex. 327; *Landauer v. Vietor*, 69 Wis. 434. Anderson was personally served, and he alone had the right to put in issue the truth of the averments in the affidavit for the attachment. R. S. 1889, secs. 561, 570, 576.

It must be conceded that the agreement between the plaintiffs and the defendant did not in terms dispose

of the attached property. It was expressly stipulated that the suit should progress to final judgment, and that the plaintiffs should realize the benefits of the litigation by levy under an execution. But the argument is made that, while the attached property was not directly disposed of by the contract, nevertheless it amounted to an indirect disposition of it. On its face this is a plausible argument. But, to ascertain whether it is well founded, we must look below the surface. We must find upon what principle the rule of law is predicated, or, in other words, the reason for the rule. When the plaintiff in an attachment suit makes a contract with the defendant, by which they attempt to, and do, dispose of the attached property outside of the aid of the court and its rules of procedure, the attachment lien is then destroyed, not because the contract is wrong or unlawful within itself, but because the parties by their contract have effectually and completely disposed of the property in a way "inconsistent with and not dependent upon the attachment lien." As put in the brief of the appellants' attorney, "the distinction lies between *abandoning* the attachment lien by contract, and *perfecting* it in pursuance of contract." In the one case the title to the attached property is sought to be acquired solely by and through the contract of the debtor; in the other case the object of the agreement is to perfect the title through the courts by the enforcement of the attachment lien. How can it be said that the latter course does not amount to the prosecution of the suit according to the rules of civil procedure? The withdrawal of the plea in abatement by Anderson was permissible. The supreme court, in the case of *Claflin v. Sylvester*, *supra*, decided flatly that such action in no way affected the lien of the attachment. Courts have gone so far as to say that an attachment suit need not be *in invitum*, and that a debtor may, for the purpose of giving a preference, induce one or more of his creditors to sue him by attachment. *Heideman, etc., Co. v. Urner*, 24

Mo. App. 534; *Landauer v. Victor*, 69 Wis. 434. This proposition, however, is only measurably correct, because the validity of preferences of that character as to other creditors of the attachment defendant must be determined by the same rules as all other voluntary preferences, notwithstanding the peculiarity of the attachment proceedings in other respects. Were it otherwise, the statute could be used as a convenient instrument for the perpetration of frauds otherwise prohibited. To illustrate: If, in the case at bar, the plaintiffs had entered into a contract with the defendant Anderson, whereby for a consideration they had agreed, antecedent to the attachment suit, not to defend any attachment which plaintiffs might bring against them, then the property of Anderson would have been disposed of by contract, even though the machinery of the attachment law would have been resorted to for carrying the contract into effect. In such event the attempted disposition of the property would have been invalid as against subsequent attachers. But that is not the present case. Here it is admitted that the institution of the attachment suit was adversary in its inception, and as the further proceedings in the suit were regular and permissible, the court was not warranted in finding that the parties had disposed of the attached property by contract.

III. We now come to the last point in the case. At the outset we are free to say that the evidence, as preserved in the record, convinces us that the attorneys who negotiated this settlement had no intention of committing a fraud against anyone. We may, therefore, lay out of the case all questions of actual fraud. This leaves only the question of constructive or legal fraud.

It is insisted by the attorney for the moving creditors that the agreement to satisfy the judgment, and to cause the books to be sold for the defendant's benefit, and the payment of money to the defendant, were reservations to his own use, that "said payments and

reservations" deprived other attaching creditors of their rights respecting the attached property, and enabled the defendant to withdraw from attachment such parts of the property.

The trial court did not pass on the question of fraud in law or fraud in fact, but we must necessarily do so, as we differ from it in the findings on the other questions presented, and hence are bound to determine whether its judgment is supportable on the ground of actual or constructive fraud, such as to make the plaintiffs' attachment voidable as to subsequent attachers. The question is one reviewable by us on the evidence, as it is necessarily one where the court does not in any sense exercise the functions of a jury. The evidence is all preserved in the record.

As before stated, there is no evidence that the plaintiffs' claim was not a just debt for the full amount, nor is there any evidence, which would authorize us to find that there was any intention on the part of either the plaintiffs or Anderson to hinder, delay or defraud other creditors of Anderson. Therefore, the only thing left for us to do is to investigate the soundness of the claim, made by the moving creditors, to the effect that the arrangement between Anderson and the plaintiffs was constructively fraudulent as to them, and operated to their disadvantage.

In the first place it would be well to refer to the elementary principle that fraud, unattended with injury to the complainant, cannot be made the basis of an action either at law or in equity. Under a statute quite similar to our own, the supreme court of Texas, in *Nenney v. Schluter*, 62 Tex. 327, held that the petition for intervention must show that the interest of the parties complaining in the attached property had suffered, or was likely to do so, from the alleged fraudulent transactions between the original parties to the suit. The moving creditors contend that the effect of the agreement was to reserve out of the funds, in the

hands of the sheriff, the sum of six hundred dollars for
the benefit of Anderson; that he was also to receive the
benefit of the sale of the books, and that, to this extent,
there was a secret reservation in the property to the use
of Anderson. If we admit this, what does it argue in
favor of the junior attaching creditors? How have they
been damaged? The validity and amount of the plain-
tiffs' debt are not questioned; their attachment was
regularly levied; the attached property had been sold
previous to this agreement, and a less sum realized than
the amount conceded to be due on the plaintiffs'
demand; the books were considered worthless; there-
fore, we are unable to understand how the junior attach-
ing creditors were prejudiced by the agreement. In
what way were the moving creditors deprived of their
rights respecting the attached property? The difficulty
or vice in the argument of the moving creditors is that
the arrangement between plaintiffs and Anderson is
treated as a voluntary conveyance by Anderson for the
purpose of giving a preference to the plaintiffs. From
this standpoint the contention is made that a secret use
or benefit reserved in favor of Anderson would vitiate
the whole transaction, and have the effect to destroy
the plaintiffs' original lien. If we accept this view, it
is quite doubtful whether the evidence establishes a use
or trust in favor of Anderson. The six hundred dollars
were to be used in the payment of Anderson's debts.
One-half of the amount was paid by the plaintiffs to
Anderson's attorney in satisfaction of his debt against
Anderson, and the remainder was paid to Anderson
under a representation that he intended to use it in
the discharge of other *bona fide* debts incurred in the
defense of the attachment suit. This arrangement was
not necessarily fraudulent. *St. Louis Coffin Co. v.
Rubelman*, 15 Mo. App. 280. It is true that the book
accounts were to be sold, and the avails, after deducting
the costs and expenses, were to be paid to Anderson.
But the moving creditors introduced no evidence as to

The value of the book accounts, and the plaintiffs' evidence tended to prove that they were of no value. Even though the parties are mistaken in reference to the value of the books, yet it is not possible, under the agreement between plaintiffs and Anderson, for the moving creditors to suffer. It was provided that the books should be sold under an order of the circuit court in the usual way; therefore, when sold, the proceeds of the sale would be in the custody of the court, and the subsequent attachers' rights thereto could be fully protected.

But the agreement between the plaintiffs and Anderson cannot be considered as a matter of bargain and sale for the purpose of giving the plaintiffs a preference. The latter's debt was *bona fide;* they had already secured it by the levy of their writ of attachment; the defendant was no longer in the possession of the property, and the right to deal with it had passed from him. The only object, therefore, that plaintiffs had in dealing with him was to relieve themselves of the burden of sustaining their attachment. The right to resist it rested exclusively with Anderson, and the subsequent attaching creditors could, in no way, interfere with it. If Anderson could voluntarily withdraw his plea, why could he not do so for a consideration? How could the moving creditors be injured? Upon what ground could they complain? No property of theirs had been taken and given to the defendant.

Our conclusion is that the judgment of the court in sustaining the motion was wrong, and must be reversed. The judgment of the circuit court will, therefore, be reversed and set aside, and the cause remanded with directions to the trial court to dispose of the proceeding in conformity with this opinion. Judge ROMBAUER concurs in this opinion; Judge THOMPSON dissents.